UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAMES P. CORNELIO,

                Plaintiff,

    v.                                          1:24-cv-01335 (AMN/PJE)

ROSANNA ROSADO, *in her official capacity*,

                Defendant.

---

**APPEARANCES:**                                          **OF COUNSEL:**

**P.M. DUBBELING, PLLC**                        **PAUL DUBBELING, ESQ.**
210 North Columbia Street
Chapel Hill, North Carolina 27514
*Attorneys for Plaintiff*

**HON. LETITIA JAMES**                            **BRITTANY M. HANER, ESQ.**
New York State Attorney General             Assistant Attorney General
Litigation Bureau
The Capitol
Albany, New York 12224
*Attorneys for Defendant*

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On November 1, 2024, Plaintiff James Cornelio commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendant Rosanna Rosado, in her official capacity as the Commissioner of the New York Department of Criminal Justice Services ("DCJS"), alleging that certain reporting requirements mandated by the New York State Sex Offender Registration Act, N.Y. Corr. L. § 168 ("SORA"), violate his First Amendment rights. *See generally* Dkt. No. 1 ("Complaint"). On February 6, 2025, Defendant moved to dismiss the Complaint pursuant to Fed.

1

R. Civ. P. 12(b)(6), Dkt. No. 10 ("Motion"), which Plaintiff opposed on February 27, 2025, Dkt. No. 12.  On March 6, 2025, Defendant filed a letter informing the Court that she does not intend to file a reply in further support of the Motion.  Dkt. No. 13.  Accordingly, the Motion is now ripe for adjudication.

For the reasons set forth below, the Motion is granted in part and denied in part.

## II. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *see Williams v. N.Y.C. Hous. Auth.*, 816 Fed. Appx. 532, 534 (2d Cir. 2020).

### A. The Parties

Plaintiff is a resident of the State of Connecticut who, in 2005, was convicted in New York State of one count of a criminal sexual act in violation of N.Y. Penal Law § 130.45 and ten counts of possessing a sexual performance by a child in violation of N.Y. Penal Law § 263.16.  *See* Dkt. No. 1 at ¶¶ 6, 51.  Plaintiff states that he currently "does not live, work, or regularly visit the State of New York" and "has no remaining ties to New York [S]tate."  *Id.* at ¶¶ 6, 56.  However, because of his 2005 convictions, Plaintiff has been designated as a "level two" sex offender in New York and accordingly must comply with certain mandates under SORA, which include, *inter alia*, periodic reports to New York's DCJS such as "annual verification, photograph updates, and notice of changes" as well as reporting certain information pertaining to his internet use.  *Id.* at ¶ 57; *see also* N.Y. Corr. L. § 168-b.  Plaintiff's failure to comply with these mandates is considered a strict liability felony under New York law.  *Id.*; *see also* N.Y. Corr. L. § 168-t.

Defendant, "[b]y information and belief," is a resident of the Northern District of New York and currently serves as the Commissioner of DCJS, which is the state agency responsible for the administration of the New York State Sex Offender Registry ("Registry"). *Id.* at ¶¶ 4, 8-9; *see also* N.Y. Corr. L. § 168-b(1). In her capacity as Commissioner, Defendant is in "sole charge of the administration" of DCJS. *Id.* at ¶ 10 (citing N.Y. Exec. L. § 836(2)).

### B. The Complaint

Plaintiff alleges that certain of SORA's reporting requirements violate his First Amendment rights.

First, Plaintiff avers that the obligation to report to DCJS "a list of 'internet accounts' and 'internet identifiers,'"[1] burdens speech protected under the First Amendment. Dkt. No. 1 at ¶¶ 62-71. Accordingly, Plaintiff argues that this reporting requirement is subject to heightened constitutional scrutiny, which the requirement cannot survive because it (i) fails to advance important governmental interests; (ii) substantially burdens more speech than is necessary to further those interests; (iii) is not narrowly tailored to achieve those interests; (iv) is not the least restrictive means of advancing those interests; and (v) is overbroad. *Id.* at ¶¶ 65-70.

Second, Plaintiff states that the obligation for registrants "who do not live, work, attend school, and who are not otherwise regularly present in the State of New York," to provide information such as their home address, place of employment, and photographs, to DCJS constitutes compelled speech in violation of the First Amendment. *Id.* at ¶¶ 72-80. Plaintiff contends that, because DCJS publishes this registration information on its website, alongside a message that "the registrant is a danger to the public," the reporting requirement obligates the out-

---

[1] "Internet Identifiers" is defined under New York law as "electronic mail address and designations used for the purposes of chat, instant messaging, social networking, or other similar internet communication." N.Y. Corr. L. § 168-a(17).

3

of-state registrant "to participate in the public dissemination of a specific message" about them. *Id.* at ¶¶ 75-77. Plaintiff states that the collection and publication of this information (i) does not advance any compelling government interest; and (ii) if it does, is not the least restrictive means to advance that compelling government interest. *Id.* at ¶¶ 78-79.

Plaintiff seeks (i) declaratory judgments pronouncing that the above-mentioned reporting requirements are unconstitutional under the First Amendment; (ii) injunctive relief prohibiting Defendant and/or DCJS from collecting and publishing the above-mentioned registration information; as well as (iii) his attorneys' fees and costs. *Id.* at 13-14.[2]

## III.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

IV.   **DISCUSSION**

   **A.   Conversion Under Fed. R. Civ. P. 12(d)**

The Court first addresses Plaintiff's argument that the Motion should "be treated as a motion for summary judgment." Dkt. No. 12 at 2. Plaintiff contends that this is the case because Defendant has submitted a declaration from Michelle Mulligan, Chief of Identification Operations for the Registry at DCJS, *see generally* Dkt. No. 10-2 ("Mulligan Declaration"), in support of the Motion.

Under Fed. R. Civ. P. 12(d), when parties present evidence outside of the pleadings on a motion to dismiss, courts must either (1) decide the motion based on the complaint alone, without considering the additional material; or (2) convert the motion to one for summary judgment under Fed. R. Civ. P. 56. *See Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000). "Attachment of an affidavit or exhibit to a Rule 12(b)(6) motion, however, does not without more establish that conversion is required." *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999). Where the court does not rely on the extrinsic evidence in adjudicating the motion to dismiss, or where the "information had no impact whatsoever" on the court's 12(b)(6) analysis, conversion is unnecessary. *Id.* at 51; *see also Taylor v. Westor Capital Grp.*, 943 F. Supp. 2d 397, 399-400 (S.D.N.Y. 2013) (citing cases).

5

Here, as will be made clear by the ensuing analysis, the Court declines to consider the Mulligan Declaration and the evidence cited therein in deciding the Motion. Accordingly, it is appropriate for the Court to proceed under Fed. R. Civ. P. 12(b)(6) and Plaintiff's request for conversion under Fed. R. Civ. P. 12(d) is denied.

### B. Substantive Arguments Under Fed. R. 12(b)(6)

The Motion consists of two main substantive arguments. First, Defendant contends that Plaintiff cannot plausibly assert a First Amendment compelled speech claim because a New York appellate court determined in 2011 that SORA lawfully applies to out-of-state residents. *See* Dkt. No. 10-1 at 7-8 (discussing *In re Doe v. O'Donnell*, 86 A.D.3d 238 (3d Dep't 2011), *lv. denied*, 17 N.Y.3d 713 (2011)). And second, Defendant contends that Plaintiff's First Amendment claim concerning SORA's internet identifier disclosure requirement should be dismissed because the requirement does not burden substantially more speech than is necessary to further an important government interest. *Id.* at 8-10. The Court addresses each argument in turn.

#### i. Plaintiff's Compelled Speech Claim

With regard to the compelled speech claim, Plaintiff alleges that since SORA requires "[r]egistrants who do not live, work, attend school, and who are not otherwise regularly present in the State of New York . . . to provide information to" DCJS, which DCJS then "largely publish[es]" for registrants who are designated as "level two" or "level three" offenders alongside a message that such registrants are a danger to the public, the statute compels speech from registrants in violation of the First Amendment. Dkt. No. 1 at ¶¶ 72-80 (SORA "requires the registrant, on an ongoing basis, to participate in the public dissemination of a specific message about the registrant."). Plaintiff alleges that DCJS maintains a website that publishes "'the [registrant's] exact address, address of the registrant's place of employment and photograph' as well as [the registrant's] 'name, physical description, age, and distinctive markings' and 'background

6

information' regarding the registrant's criminal conviction," in addition to information about the registrant's vehicle. *Id.* at ¶¶ 44-45 (citing N.Y. Corr. L. § 168-q).[3] Plaintiff alleges that the collection and publication of this information from out-of-state residents violates the First Amendment because it does not advance a compelling government interest and, even if it does, the manner in which it is collected and published is not the least restrictive means to advance that interest. *Id.*

Since the Supreme Court's decision in *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943), courts have recognized the "firm constitutional doctrine that the state cannot constitutionally compel individuals to speak or think in prescribed ways." *Carroll v. Blinken*, 957 F.2d 991, 995 (2d Cir. 1992) (citing *Barnette*, 319 U.S. at 645), *overruled in part on other grounds*, 585 U.S. 878 (2018). This doctrine protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). "To force a person to speak, and compel participation, is a severe intrusion on the liberty and intellectual privacy of the individual. Just as compelled silence will extinguish the individual's right of expression, compelled speech will vitiate the individual's decision either to express a perspective by means of silence, or to remain humbly absent from the arena." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018).

In assessing laws that are found to compel protected speech, courts apply differing levels of scrutiny depending on "the type of speech at issue." *CompassCare v. Hochul*, 125 F.4th 49, 63 (2d Cir. 2025) (citing *Riley v. Nat'l Fed'n for the Blind of N.C., Inc.*, 487 U.S. 781, 787 (1988)).

---

[3] Plaintiff does not allege that DCJS publishes internet identifier information collected pursuant to N.Y. Corr. L. § 168-b(1)(a). *See also* Dkt. No. 10 at 9 ("Internet information is not released to the public."). Accordingly, Plaintiff's compelled speech claim concerns only the non-internet-related information that is collected and published by DCJS for purposes of registration.

"'Government action that stifles speech on account of its message, or that requires the utterance of a particular message favored by the Government, contravenes' the right of each person to 'decide for himself or herself the ideas and beliefs deserving of expression,' and is subject to 'the most exacting scrutiny.'" *Id.* (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641-42 (1994)). On the other hand, regulations on "matters unrelated to speech and [that] only incidentally affect First Amendment rights" receive a lower form of scrutiny. *Bd. of Managers of Soho Intern. Arts Condo. v. City of N.Y.*, No. 01-Civ-1226, 2004 WL 1982520, at *10 (S.D.N.Y. Sept. 8, 2004) (citing *Turner*, 512 U.S. 643).

Prior to engaging in any form of scrutiny, however, courts must first determine whether the implicated regulation actually affects speech or, in the alternative, affects conduct that indirectly impacts speech. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986) (determining whether speech rights apply first requires finding whether the conduct with a "significant expressive element" drew the legal remedy or the regulation "has the inevitable effect of singling out those engaged in expressive activity"). In *Maynard*, the Supreme Court clarified that a state violates an individual's protection from compelled speech either "[i] by forcing an individual through speech to affirm a religious, political, or ideological cause that the individual did not believe in; or [ii] by forcing an individual as a part of his daily life to be an instrument for fostering public adherence to an ideological point of view in which he did not believe." *Medina v. Cuomo*, No. 7:15-CV-01283, 2015 WL 13744627, at *10 (N.D.N.Y. Nov. 9, 2015), *report and recommendation adopted*, 2016 WL 756539 (Feb. 25, 2016) (citing *Maynard*, 430 U.S. at 715). Thus, to state a claim, a plaintiff must allege a "set of facts where the state forces "an individual [to] personally speak the government's message" or "force[s] one speaker to host or accommodate another speaker's message." *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.*, 546 U.S. 47, 63

(2006); *see also Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005) (state actors may not compel a person to utter a message with which the person does not agree); *Wooley*, 430 U.S. at 715 (test of whether the state has violated an individual's right to refrain from speaking is "whether the individual is forced to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable.").

Here, the Complaint does not adequately set forth how the collection and publication of the registration information detailed above compels speech that is protected under the First Amendment. Plaintiff does not assert, for example, that the collection of a registrant's address, place of employment, physical appearance, or the details of his or her relevant conviction in any way affirms the registrant's "religious, political [or] ideological cause," or that such information forces the registrant to foster "an ideological point of view [that] he [or she] finds unacceptable." *Barnette*, 319 U.S. at 715. Nor is it likely that Plaintiff could make such an assertion, as the Court is unaware of any controlling precedent that has held that the mere collection and dissemination of this type of factual information constitutes a compelled speech violation. *C.f.*, *Wooley*, 430 U.S. at 715 (law requiring license plates to show the state's motto "Live Free or Die" violated the First Amendment); *Pacific Gas & Electric Co. (PG&E) v. Public Utils. Comm'n of Cal.*, 475 U.S. 1, 14 (1986) (order requiring the state's privately-owned utility provider to include in its billing envelopes political editorials of a third-party interest group with which the provider disagreed was unconstitutional); *Riley*, 487 U.S. at 798 (regulation requiring charity fundraisers to disclose to potential donors the percentage of contributions collected during the previous year that were actually given to charity was unconstitutional, since requirement would necessarily hamper charitable solicitation, which the Court reasoned is "characteristically intertwined with informative and perhaps persuasive speech"); *Nat'l Inst. of Family & Life Advocs. v. Becerra*, 585 U.S. 755,

776-77 (2018) (law requiring clinics that serve pregnant women to notify clients that California provides low-cost services, including abortions, violated the First Amendment).  Put simply, the type of information that is collected and published by DCJS is not the type of "speech" that courts have traditionally recognized as protected under the First Amendment.  Thus, Plaintiff fails to state a plausible claim for a compelled speech violation.  Moreover, while the Complaint correlates the collection and dissemination of this information with the fact that Plaintiff no longer resides or associates with New York State, the Court is unable to discern how that fact alters the analysis.  As outlined above, the examination of a compelled speech claim turns on the *type* of speech that is at issue, not the location from which that speech is transmitted.  *See CompassCare*, 125 F.4th at 63.  In other words, if the Court were to find that New York's collection and dissemination of a registrant's address, place of employment, physical appearance, or the details of his or her relevant conviction violated the First Amendment, such a holding would arguably apply to both residents and non-residents.

Regardless, even if Plaintiff could adequately plead that providing this type of information to the state constituted compelled speech, the claim still fails because this Court has previously adopted holdings from the Fifth and Eighth Circuits finding that "there is no right to refrain from speaking when essential operations of government require it for the preservation of an orderly society as in the case of compulsion to give evidence in court."  *Medina*, 2015 WL 13744627, at *10 (quoting *United States v. Sindel*, 53 F.3d 874 (8th Cir. 1995)).  Under that logic, as was recognized in *Sindel* and *United States v. Arnold*, 740 F.3d 1032 (5th Cir. 2014), "when the government, to protect the public, requires sex offenders to register their residence, it conducts an essential operation of the government, just as when it requires individuals to disclose information for tax collection."  *Medina*, 2015 WL 13744627, at *10 (quoting *Arnold*, 740 F.3d at 1035).  Here,

10

as in *Medina*, the Court finds the reasoning outlined in *Sindel* and *Arnold* applicable to the information that is the subject of Plaintiff's compelled speech claim.[4]

The Court notes, however, that it agrees with Plaintiff, albeit for different reasons, that the New York Appellate Division's 2011 ruling in *O'Donnell* is distinguishable from the instant action. There, the petitioner sought to annul DCJS's determination that he should continue to register as a sex offender in New York even though he had relocated to Virginia following his conviction, claiming that the requirement was an overreach of DCJS's statutory authority under SORA and violated the Full Faith and Credit Clause of the U.S. Constitution. *O'Donnell*, 86 A.D.3d at 240, 243. In analyzing specific provisions of SORA, the Appellate Division concluded that "the statute's dual purposes of monitoring sex offenders' whereabouts and aiding law enforcement in prosecuting recidivist offenders would be frustrated if a sex offender's registration obligations were to cease when he or she moves out of the state." *Id.* at 241-42. Moreover, the court found that the Full Faith and Credit Clause was not implicated since "New York and Virginia [] each separately adjudicated the risk posed by petitioner to their respective citizens and imposed registration requirements upon petitioner pursuant to each state's sex offender registration law."

---

[4] In a similar vein, Plaintiff's allegation that "[i]n publishing the information, the government specifically makes the claim that the registrant is dangerous to the public," Dkt. No.1 at ¶ 76, does not alter the Court's conclusion. When the "government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Div., Sons of the Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (citation omitted). "When the government wishes to state an opinion, to speak for the community, to formulate politics, or to implement programs, it naturally chooses what to say and what not to say." *Shurtleff v. Boston*, 596 U.S. 243, 251 (2022). Thus, "[g]overnment speech may adopt a particular viewpoint, so long as it does not coerce private speakers into espousing a certain view." *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 108 (3d Cir. 2022) (citing *Walker*, 576 U.S. at 207-08). Accordingly, having already found that the collection and dissemination of this category of information does not force Plaintiff to adhere to any ideological point of view, the compelled speech claim fails regardless of the fact that New York may use that information to adopt a particular viewpoint or opinion regarding Plaintiff's safety to the community.

*Id.* at 243. Unlike the instant action, the *O'Donnell* court did not consider the question of whether the petitioner's registration requirements in New York constitute compelled speech or violate the First Amendment. Thus, the decision is of no import here.

For the reasons outlined above, the Court finds that Plaintiff has failed to state a compelled speech claim and, accordingly, grants the portion of Defendant's Motion seeking to dismiss that claim.

> ii. **Plaintiff's First Amendment Claim Regarding SORA's Internet Identifier Disclosure Requirement**

Consistent with recent Second Circuit precedent, however, the Court reaches a different conclusion with respect to the First Amendment implications of SORA's internet identifier disclosure requirement. According to Plaintiff, upon registration, DCJS maintains a file of each registrant that contains, *inter alia*, the registrant's "internet accounts with internet access providers . . . [and] internet identifiers that such [registrant] uses." Dkt. No. 1 at ¶¶ 13-14 (quoting N.Y. Corr. L. § 168-b(1)(a)). A registrant is also continually required to notify DCJS of any changes to that information within ten calendar days or risk being prosecuted for a Class E felony. *Id.* at ¶¶ 18, 25 (citing N.Y. Corr. L. §§ 168-f(4), 168-t). Plaintiff claims that the internet identifier disclosure requirement constitutes an improper burden on speech in violation of the First Amendment. *Id.* at 10.

As both Parties acknowledge, Plaintiff successfully brought a cause of action in the District of Connecticut challenging similar provisions of Connecticut's sex offender registry laws in 2020. *See Cornelio v. Conn.*, 32 F.4th 160 (2d Cir. 2022). In that case, the district court concluded that the statutory requirement at issue burdened free speech, but that the statute survived review under intermediate scrutiny. *Id.* at 172. The Second Circuit agreed that Connecticut's internet identifier disclosure requirement under its sex offender registration law, Conn. Gen. Stat. § 54-250 *et seq.*,

hampered speech protected by the First Amendment, finding that it: (i) burdened a registrant's "ability and willingness to speak on the Internet," *Cornelio*, 32 F.4th at 169 (quoting *Doe v. Harris*, 772 F.3d 563, 572 (9th Cir. 2014)); (ii) "applie[d] specifically to speakers engaged in online communication," and therefore targeted "conduct with a significant expressive element," *id.* (quoting *Arcara*, 478 U.S. at 706-07); and (iii) "prevent[ed] a registrant from speaking anonymously," *id.* at 169-70 (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)). In performing the intermediate scrutiny analysis,[5] the Second Circuit noted the state's burden in cases such as this to "identify evidence—or, at least provide 'sound reasoning' that 'draws reasonable inferences based on substantial evidence'"—that the law advances an important governmental interest unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests. *Id.* at 171 ("To establish that the law advances important governmental interests, the government 'must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.'") (quoting *Turner* 512 U.S. at 641). Given that evidentiary burden, the Second Circuit recounted that "[t]he dismissal of a claim challenging a law that abridges protected speech will rarely, if ever, be appropriate at the pleading stage. Instead, factual development will likely be indispensable to the assessment of whether [such a law] is constitutionally permissible." *Id.* at 172 (internal quotations and citations omitted). Thus, because Connecticut had yet "to identify some empirical basis for believing that the disclosure requirement materially advance[d] an

---

[5] The Second Circuit did not address the issue of whether strict or intermediate scrutiny applied to this type of disclosure requirement, primarily because Plaintiff chose not to contest the district court's application of intermediate scrutiny and since Plaintiff "state[d] a plausible claim under intermediate scrutiny, the level of scrutiny [did] not alter [the] decision." *Id.* at 170-71 (citing, *inter alia*, *McCutcheon v. FEC*, 572 U.S. 185, 199 468 (2014) (plurality opinion)).

13

important governmental interest," and was unable to "demonstrate that a less burdensome alternative . . . would not advance the asserted governmental interest," the Second Circuit held that the district court erred in concluding on a motion to dismiss that the disclosure requirement survived intermediate scrutiny. *Id.* at 174-175 ("The government may be able to identify some empirical basis for believing that the disclosure requirement materially advances an important governmental interest. At this stage, however, Cornelio has stated a plausible claim."). The Court sees no reason to depart from that reasoning here.

As an initial matter, despite Defendant's argument to the contrary, Connecticut's internet identifier disclosure requirement is almost identical to SORA's. Both require a registrant to provide a state agency with personal email addresses, instant message accounts, and other similar internet communication identifiers. *Compare* Conn. Gen. Stat. § 54-251(a), *with* N.Y. Corr. L. § 168-b(1)(a). Both require the registrant to update the state agency if the registrant modifies or establishes new internet identifiers. *Compare* Conn. Gen. Stat. § 54-253(b), *with* N.Y. Corr. L. § 168-f(4). And both carry felony consequences for failure to comply. *Compare* Conn. Gen. Stat. § 54-253(e), *with* N.Y. Cor. L. § 168-t. Most notably, the "important governmental interest" set forth by Defendants in this case and in the Connecticut case is identical: to deter registrants from using the internet to engage in further crimes. *See Cornelio*, 32 F.4th at 172-73. Thus, the Court finds no basis to dismiss this action at this stage. *See id.* at 172.

Moreover, the Court declines to consider the argument presented by Defendant concerning the New York Legislature's amendment of SORA in 2008 to permit social networking sites to apply to DCJS to receive internet identifiers of registered sex offenders, which allegedly enables them to directly remove registrants from their websites. Defendant relies on the Mulligan Declaration to make this argument. *See* Dkt. No. 10-1 at 9 (social media sites can use DCJS data

14

to "remove offenders from internet spaces where they would otherwise have the ability to contact potential victims."). Defendant contends that the 2008 amendment distinguishes SORA from the Connecticut statute, which permitted only law enforcement to access such information. *Id.* Defendant further contends that the Connecticut defendants were unable to produce any evidence that the regulation at issue was actually aiding in the removal of registrants from the internet or otherwise supporting the deterrence interest in any manner given the Connecticut statute's lack of a similar provision. *Id.* Although the Court declines to consider this argument, which is premised on the information presented in the Mulligan Declaration, it notes that even if it were to do so, the Mulligan Declaration would be an insufficient basis on which to grant the Motion. First, the Mulligan Declaration attaches a single email between DCJS representatives from 2010 that avers that, at some point in time, nearly 4,000 registrants were removed from unnamed social networking sites. *See* Dkt. No. 10-2. As Plaintiff points out, Defendant has not shown that any social networking sites are actively using Registry data to remove registrants from their sites. *See* Dkt. No. 12 at 7 ("[I]t appears that New York State stopped engaging with new websites more than a decade ago and there is no evidence that in the last fifteen (15) years these websites have used this information at all."). Moreover, even if the Mulligan Declaration could establish that SORA sufficiently advances the purported deterrence objective, Defendant has not shown, at this juncture, that the internet identifier disclosure requirement "does not burden substantially more speech than necessary to further" that objective. *See Cornelio*, 32 F.4th at 175 (finding that the Connecticut disclosure requirement "appears to be overbroad because it applies to all persons subject to the sex offender registration law, including registrants who have never engaged in the sort of illicit online activity that the government seeks to deter").

15

Accordingly, consistent with the Second Circuit's holding in *Cornelio v. Conn.*, 32 F.4th 160 (2d Cir. 2022), the portion of Defendant's motion seeking to dismiss Plaintiff's First Amendment claim regarding SORA's internet identifier disclosure requirement is denied.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's motion to dismiss, Dkt. No. 10, is **GRANTED IN PART AND DENIED IN PART**; and the Court further

**ORDERS** that Plaintiff's First Amendment compelled speech claim is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 29, 2025
Albany, New York

Anne M. Nardacci
U.S. District Judge